UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY ANN DALTON,

    Plaintiff                                           Civil Action No. 10-13661

v.                                               District Judge Nancy G. Edmunds

                                                   Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits and Supplemental Security Income Benefits. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On April 19, 2007, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"), alleging disability as of July 27, 2006 (Tr. 97-107). Following the initial denial of benefits, ALJ Richard Sasena conducted an administrative hearing in Detroit, Michigan on October 14, 2009 (Tr. 29). Plaintiff, represented by Stephen Thomas, testified, as did Vocational Expert ("VE") Jennifer

Turecki (Tr. 34-48, 48-52). On April 5, 2010, ALJ Sasena determined that Plaintiff was capable of a significant range of unskilled light work, and therefore not disabled (Tr. 22-24). On June 25, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on September 14, 2010.

## BACKGROUND FACTS

Plaintiff, born October 22, 1961, was age 48 when ALJ Sasena issued his decision (Tr. 97). She obtained a GED and received training in word processing and data entry, working previously as a data entry clerk, receptionist, retail salesperson, and cashier (Tr. 119, 126). Plaintiff alleges disability as a result of asthma, Carpal Tunnel Syndrome ("CTS"), and lower back and knee pain (Tr. 118).

### A.     Plaintiff's Testimony

Plaintiff, most recently employed as a cashier, testified that she stopped working in December, 2006 because of dizzy spells and CTS (Tr. 34). She also alleged that leg and back problems prevented either standing or sitting for extended periods (Tr. 35). Plaintiff, 5'4" and 255 pounds, reported that she lived with her mother, son, and daughter (Tr. 36). She reported that she had not received Workers' Compensation since 2006 (Tr. 37).

Plaintiff testified that her left leg problems created pain and stiffness for approximately 10 minutes upon arising in the morning (Tr 38). She reported that she experienced back pain for approximately 15 minutes twice every day and that she used an inhaler daily for the treatment of asthma (Tr. 39). She indicated that she sought emergency treatment for asthma in the previous June (Tr. 40). She denied performing any household

chores, but stated that she was able to take care of her own grooming needs (Tr. 41). She testified that her driver's license had been suspended for expired plates and she now took public transportation or relied on others for transportation (Tr. 41). She reported that she attended church but did not participate in clubs or groups, noting that her hobbies were limited to reading (Tr. 42)

Plaintiff estimated that she could sit for 10 minutes and stand for two minutes before experiencing pain (Tr. 43). She stated that she was unable to walk for more than two blocks or lift a gallon of milk (Tr. 43). She reported that she arose at 6:00 a.m. and retired at 11:00 p.m., adding that she took intermittent naps during the course of the day (Tr. 44).

In response to the ALJ's observation that she appeared to be receiving income for performing household chores for a neighbor, Plaintiff stated that her daughter was actually performing the work, but using Plaintiff's name (Tr. 45-46). In response to questioning by her attorney, Plaintiff testified that she was further limited by the fact that she was blind in the left eye, experienced dizzy spells up to six times a day, and had regular crying jags (Tr. 47-48).

      **B.    Medical Evidence**

      **1. Treating Sources**

In January, 2006, Plaintiff sought emergency treatment after passing out during a "heated" argument (Tr. 189). A stress test and cardiac catheritization were both negative for abnormalities (Tr. 170-173, 283-284). In July, 2006, Plaintiff again sought emergency treatment for dizziness and chest pain (Tr. 231-238). A chest x-ray was unremarkable (Tr.

235). Imaging studies were also negative for fractures (Tr. 174-176, 195-197). L. C. Rivera, M.D. noted Plaintiff's complaints of stiffness and muscle weakness (Tr. 208). Mahmoud S. Mohamed, M.D., prescribed Topamax for migraine headaches and the continued use of wrist splints (Tr. 224). The following month, rheumatologist Mustapha Mallah, M.D. remarked that a recent nerve conduction study was normal, but that Plaintiff complained of continuing finger numbness (Tr. 177, 211, 226). Plaintiff reported that Ultram made her dizzy (Tr. 177). Dr. Mallah prescribed Vicodin and Flexieril as well as wrist splints (Tr. 179, 212). In September, 2006, imaging studies of the lumbosacral spine were unremarkable (Tr. 180, 352). In October, 2006, Plaintiff again sought emergency treatment for chest pain (Tr. 239-245). A chest x-ray was normal (Tr. 216). A CT scan of the head was also normal (Tr. 217). Plaintiff sought emergency treatment a second time in one month, reporting that her daughter had assaulted her (Tr. 271). She was treated and released (Tr. 272).

      November, 2006 imaging studies of both knees were normal (Tr. 199-200, 355). The same month, Dr. Mallah completed a "Lumbar Spine Residual Functional Capacity Questionnaire," stating that Plaintiff experienced CTS, fibromyalgia and degenerative disc disease (Tr. 345, 363). He opined that Plaintiff was unable to stand for more than 10 minutes or sit for more than two hours (Tr. 347). He found further that Plaintiff required rest periods every 30 minutes (Tr. 347). He denied that Plaintiff had problems "reaching, handling, or fingering" (Tr. 348). In December, 2006, Dr. Rivera completed a functional capacity questionnaire, stating that Plaintiff experienced CTS and osteoarthritis with a "poor" prognosis (Tr. 360). Dr. Rivera opined that Plaintiff could sit for up to 30 minutes at a time,

stand for five minutes, and walk for one block (Tr. 362). He precluded Plaintiff from all twisting, stooping, bending, crouching, and climbing (Tr. 363). He found that Plaintiff's hand condition prevented her from performing fine manipulations for more than 10 percent of her workday (Tr. 363).

In January, 2007, a CT study of the head was negative for abnormalities (Tr. 201). The following month, Plaintiff reported to Dr. Mohamed that Topamax improved her migraine headaches by 40 percent (Tr. 220). Dr. Mohamed remarked that Plaintiff was "looking to see if she [could] have a medical retirement" (Tr. 228). In March, 2007, Plaintiff sought emergency treatment for flu-like symptoms (Tr. 250). A chest x-ray was normal (Tr. 218). Plaintiff denied depression or other mental conditions (Tr. 251). The following month, Plaintiff reported feeling depressed because of a cousin's recent death and her inability to take care of her mother (Tr. 286). She was encouraged to make healthy diet choices (Tr. 287). In July, 2007, Plaintiff sought emergency treatment for left side and leg weakness (Tr. 405). An imaging study of the heart was normal (Tr. 367). A CT of the head performed the same month was also unremarkable (Tr. 368). Emergency room notes from the same month show that Plaintiff exhibited left upper and lower extremity weakness (Tr. 371).

Emergency room notes from March, 2008 indicate that Plaintiff experienced back pain (Tr. 445). Imaging studies of the cervical spine were unremarkable (Tr. 447). Imaging studies of the thoracic and lumber spine showed degenerative changes but "minimal" disc protrusion (Tr. 450). A November, 2008 CT of the head was unremarkable (Tr. 523). In May, 2009, imaging studies showed no evidence of deep vein thrombosis (Tr. 505). A stress

test was negative for abnormalities (Tr. 507). In October, 2009, Plaintiff's mother submitted a letter on behalf of Plaintiff's claim for disability, stating that Plaintiff routinely dropped items as a result of CTS and experienced recurrent chest pains (Tr. 460).

### 2. Consultive and Non-examining Sources

In June, 2007, Amer Arshad, M.D. performed a physical examination on behalf of the SSA (Tr. 299-306). Plaintiff reported depression as well as knee, low back, wrist, and arm pain but denied that her low back pain radiated to other areas (Tr. 299). Dr. Arshad observed 5/5 strength in the upper and lower extremities and normal manipulative abilities (Tr. 301-302).

The same day, Ibrahim Youssef, M.D. performed a consultive psychological evaluation of Plaintiff (Tr. 307-310). Plaintiff reported that she had experienced depression for the past year as a result of physical problems, stating that she had sleep disturbances, migraines, and crying jags (Tr. 307). She also reported bouts of anxiety, characterized by shortness of breath and chest pain (Tr. 307). She indicated that she received a prescription for Zoloft one month earlier (Tr. 307). She admitted to caring for her grandson on a regular basis but denied performing housework or driving (Tr. 308). Plaintiff exhibited poor self-esteem and motivation but was in contact with reality (Tr. 308). Dr. Youssef, M.D. assigned Plaintiff a GAF of 60[1] (Tr. 309).

---

[1] A GAF score of 51–60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders–Text Revision* at 34 ( *DSM–IV–TR* ) (4th ed.2000).

The same month, a non-examining physical Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff retained the capacity to lift 50 pounds occasionally and 25 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 312). The Assessment found the absence of postural, manipulative, visual, communicative, or environmental limitations (Tr. 313-315). The Assessment concluded by stating that Plaintiff's claims were "not found particularly credible" (Tr. 316).

Also in June, 2007, Dr. Leonard Balunas, Ph.D. completed a Psychiatric Review Technique, finding the presence of an affective disorder (depression) (Tr. 326, 329). He found that Plaintiff experienced moderate deficiencies in concentration, persistence, and pace but otherwise mild or non-existent limitations (Tr. 336). Dr. Balunas also completed a mental Residual Functional Capacity, finding that Plaintiff experienced moderate limitations in understanding and carrying out detailed instructions and maintaining concentration (Tr. 322-323). Dr. Balunas found that Plaintiff was nonetheless capable performing unskilled work (Tr. 321, 324).

### C.   VE Testimony

VE Jennifer Turecki classified Plaintiff's past relevant work as a secretary as skilled

and sedentary; cashier, unskilled/light; and data entry, semi-skilled/sedentary[2] (Tr. 49). She reported that Plaintiff possessed transferrable skills from the secretarial position (Tr. 49). She testified that if Plaintiff were limited to exertionally medium, unskilled work, all of the former jobs would be precluded but she could perform the exertionally medium work of a hand packer (5,000 jobs in the regional economy); laundry worker (3,000); dishwasher (4,000); and punch press operator (40,000) (Tr. 49-50).

The ALJ then posed the following hypothetical question, taking into account Plaintiff's educational level and age:

> If someone is limited to light work, occasional climbing, balancing, stooping, crouching and crawling, and no restrictions on the – no mental limitations, could any past relevant work be done?

(Tr. 50). The VE reported that the individual could perform Plaintiff's former jobs (Tr. 50).

However, if the same individual were also limited by "a sit/stand option, occasional climbing, balancing, stooping , crouching, crawling, no vibrating tools, but simple routine tasks, no interaction with the public, [and] occasional interaction with co-workers," the VE found that the individual could not return to any of her former jobs but could perform the light, unskilled work of a sorter (4,000); inspector (3,000); and machine tender (12,000) (Tr. 51). The VE reported that the same individual could perform the *sedentary* unskilled work

---

[2]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

of a bench assembler (3,000); surveillance system monitor (1,500); and plastic sorter (1,500) (Tr. 51). The VE then testified that if the same individual were also limited to frequent (as opposed to constant) handling and fingering, the jobs of packer, laundry worker, sorter, and bench assembler would be eliminated (Tr. 51). The VE concluded by stating that her job findings were consistent with the information found in the Dictionary of Occupational Titles (Tr. 52).

### D. The ALJ's Decision

ALJ Sasena found that Plaintiff experienced the "severe" impairments of degenerative disc disease, degenerative joint disease, CTS, left eye blindness, obesity, and depression as defined by 20 C.F.R. § 404.1520(c), but that none of the conditions met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 10-11). The ALJ determined that Plaintiff retained the following RFC:

> To perform light work . . .except she requires a sit/stand option with only occasional climbing, balancing, stooping, kneeling, crouching and crawling; avoid concentrated exposure to vibrating tools; limited to simple, routine, repetitive tasks (requires little judgment, can be learned in short period); no interaction with the public; and only occasional interaction with co-workers (not as a team member)

(Tr. 12-13). Adopting the VE's job numbers, the ALJ found that Plaintiff could perform the work of a sorter, inspector, and machine tender (Tr. 23).

The ALJ discounted Plaintiff's professed level of limitation, remarking that "[t]here are several factors that are damaging to [her] credibility. . ." (Tr. 20). He noted that Plaintiff admitted that her daughter was working under Plaintiff's name (Tr. 20). He also noted the absence of objective medical evidence supporting Plaintiff's allegations of back pain (Tr.

-9-

20). Finally, the ALJ observed that Plaintiff had refused surgical intervention for CTS and had not received any mental health treatment (Tr. 20-21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Substantial Evidence Supports the ALJ's Findings

Plaintiff, proceeding *pro se*, argues that her "due process" and "equal [protection] rights" entitle her to benefits. *Plaintiff's Brief, Dock. #17.*

Because Plaintiff is currently unrepresented, her argument in favor of benefits is liberally construed.  However, her contention that the denial of benefits violated her due process or equal protection rights is without merit.  The hearing transcript shows that the ALJ

properly developed the record by examining Plaintiff at length about her medical conditions, daily activities, and residual functional capacity (Tr. 34-48). *Lashley v. Secretary of Health and Human Services* 708 F.2d 1048, 1051 (6th Cir. 1983); *Richardson v. Perales,* 402 U.S. 389, 411 91 S.Ct. 1420, 1432, 28 L.Ed.2d 842 (1971).

In addition, the ALJ's decision contains a comprehensive and accurate summation of Plaintiff's medical history (Tr. 10-20). Citing the treating records, the ALJ provided ample reasons for discounting Plaintiff's allegations of disability (Tr. 14, 20-21). He noted that numerous imaging studies and other objective tests had failed to show the presence of heart disease or significant back problems (Tr. 15-16, 19). He permissibly discounted Plaintiff's allegations of limitations by observing that following the alleged onset of disability, she falsely claimed earnings in her own name for work performed by her daughter. *See Roberts v. Astrue,* 2010 WL 1418423, *3 (E.D.Ky. 2010)(citing SSR 96-7p)("'One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record'").

The ALJ's analysis of the treating physicians' opinions was also procedurally and substantively sound. He noted aptly that Dr. Mallah's November, 2006 opinion that Plaintiff was unable to perform even sedentary work was unsupported by any objective testing (Tr. 21). In fact, Dr. Mallah's opinion that spinal problems and fibromyalgia created disability (Tr. 345-347) comes on the heels of September, 2006 imaging studies of the spine showing

normal results[3] (Tr. 180, 352). The ALJ also discredited Dr. Rivera's opinion by noting the absence of objective support for the finding that Plaintiff would need to miss one day of work each week (Tr. 348). He also observed that Plaintiff continued to care for her grandchild on a daily basis, attend church regularly, and use public transportation (Tr. 21).

Because the ALJ's determination that Plaintiff was not disabled is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra.*

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be DENIED, and Defendant's Motion for Summary Judgment GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.

---

[3]Somewhat confusingly, despite Plaintiff's allegations of limited upper extremity function due to CTS, Dr. Mallah opined that Plaintiff did not experience any manipulative limitations (Tr. 348).

1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: October 7, 2011

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 7, 2011.

s/Susan Jefferson
Deputy Clerk
